UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                      Case Number 08-20497-BC

v.                                    Honorable Thomas L. Ludington

ROBERT NOEL,

          Defendant.

_____/

**ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS/FOR LACK OF JUDICIAL POWER AND JURISDICTION OF COUNTS 1, 2, AND 3 OF INDICTMENT" [DKT. # 21], DEFENDANT'S MOTION FOR SUBPOENA DUCES TECUM [DKT. # 25], DEFENDANT'S "MOTION TO DISMISS INDICTMENT COUNTS 1, 2, AND 3" [DKT. # 27], AND DEFENDANT'S "MOTION TO CHANGE VENUE, MOTION TO DISQUALIFY JUDGE" [DKT. # 67], AND DENYING AS MOOT DEFENDANT'S "MOTION FOR SUBPOENA DUCES TECUM/BEST EVIDENCE OR EXCULPATORY EVIDENCE" [DKT. # 22], AND MOTION FOR SUBPOENA DUCES TECUM [DKT. # 24], DIRECTING THE GOVERNMENT TO FURNISH DOCUMENTS TO DEFENDANT, DIRECTING DEFENDANT TO FILE A SUPPLEMENTAL RESPONSE, DIRECTING THE GOVERNMENT AND DEFENDANT TO PROVIDE ADDITIONAL LEGAL AUTHORITY, AND DIRECTING THE GOVERNMENT TO FILE CERTAIN RESPONSES**

On September 24, 2008, Defendant Noel was indicted on three counts of violations of 18 U.S.C. § 922(e) and (g)(1), knowingly possessing, in and affecting commerce, firearms, by a person convicted of a crime punishable by imprisonment for a term exceeding one year, on August 3, 2007, and July 24 and August 21, 2008. On May 21, 2009, the Court granted defense counsel's motion to withdraw from the case based on a complete breakdown in the attorney-client relationship. [Dkt. # 41]. As of that date, nine motions were pending that Defendant had filed on his own behalf. *See* [Dkt. # 19, 20, 21, 22, 24, 25, 27, 33, 34]. Three motions to suppress filed by defense counsel were also pending. *See* [Dkt. # 16, 17, 18].

Subsequently, attorney Kenneth Sasse was appointed to represent Defendant. Following a status conference on June 29, 2009, and on the record, defense counsel sought an additional thirty days to review the pending motions and to speak with Defendant concerning whether defense counsel could advance the arguments raised in Defendant's motions. Defendant agreed to the extension of time, and subsequently, defense counsel withdrew two motions to suppress filed by prior counsel and filed two additional motions to suppress. *See* [Dkt. # 51, 52]. Defendant, however, continued to file documents on his own behalf. *See* [Dkt. # 44, 46, 48, 50]. As a result, counsel for Defendant filed a motion for "determination of counsel's role" [Dkt. # 56]. The Court held a hearing on this motion on September 22, 2009.

At the hearing, Defendant made it clear to the Court that he wished to proceed pro se. For the reasons stated on the record and after informing Defendant of his right to counsel and the wisdom of using counsel, the Court determined that Defendant would be allowed to proceed pro se and appointed current defense counsel Kenneth Sasse as standby counsel. In light of this development, the Court ordered the government to respond to the motions filed by Defendant on his own behalf and granted the government seven days to do so. Subsequent to the hearing, Defendant filed another pro se motion [Dkt. # 67], in which he seeks "to disqualify judge and change [] venue."

The Court held a hearing on all of the pending motions on October 21, 2009.

I

The counts against Defendant Noel arise from the execution of three search warrants at the residence located at 1123 Brown Street, Saginaw, Michigan. On August 3, 2007, and July 24, 2008, officers obtained warrants to search the residence based upon affidavits describing controlled purchases of cocaine by confidential informants at the residence. On August 21, 2008, the officer

-2-

obtained a warrant based upon an affidavit describing an identified woman's complaint that Defendant had brandished a handgun and threatened to kill her. A fourth search warrant, executed on September 4, 2008, is also at issue, and was based on an affidavit regarding a controlled buy.

The first search, giving rise to count 1, took place on August 3, 2007, and is the subject of defense counsel's motion to suppress filed at Docket No. 51 and Defendant's own motion at Docket No. 20. The affidavit supporting the search warrant executed on that date was submitted by Detective Cari Guerrero of the Saginaw Township Police Department. The property to be searched for at 1123 Brown Street included, inter alia, controlled substances and firearms. The portions of the affidavit relevant to the motion to suppress provide:

3.        The FACTS establishing probable cause or the grounds for the search are:

. . .

B)        Within the last 48 hours, a confidential informant (hereinafter "CI"), made a controlled purchase of a quantity of crack cocaine from within the above described residence [1123 Brown Street]. The CI was first searched for the presence of controlled substances and US currency with none being found. The CI was provided with a quantity of pre-recorded BAYANET drug buy funds and was transported to the address by an undercover officer. The CI was seen to enter the location, remain for a short period of time and then exit. The CI then met with investigators at a pre-determined location and turned over the suspected crack cocaine to a Detective. The substance was field tested positive for the presence of cocaine. The CI stated that the cocaine had been purchased from a black male, known as the street name of "Face" approximately 45 yrs old. At the time of the sale the CI stated that he/she was told by the seller to come back if more crack cocaine was sought to be purchased.

C)        The CI has provided this information based on his/her personal knowledge. Further, the CI is known to be reliable and the information provided to be credible because the CI has previously provided information to law enforcement officers regarding persons and places involved in the sale or distribution of illegal controlled substances and has engaged in activities which have resulted in the recovery of controlled substances. Further, the information provided by the CI has been independently verified by investigating officers to the extent possible.

. . .

Mtn to Supp. Ex. 1 [Dkt. # 51-3].

The second search, giving rise to count 2, took place on July 24, 2008, and is also the subject of defense counsel's motion to suppress filed at Docket No. 51 and Defendant's own motion at Docket # 20.  The affidavit supporting the search warrant executed on that date was submitted by Michigan State Trooper Tim Larrison.  The portions of the affidavit relevant to the motion to suppress are nearly identical to the portions of the affidavit described above.  The exceptions are that in this affidavit, Trooper Larrison stated that the confidential informant was "surveilled to the address by BAYANET officers," rather than "transported to the address by an undercover officer," the street name of the seller is stated as "Booty Face," rather than "Face," what was previously stated in paragraph C is titled paragraph D, and the new paragraph C describes the circumstances surrounding the execution of the August 3, 2007, search warrant.  Mtn to Supp. Ex. 2 [Dkt. # 51-4].

The third search, giving rise to count 3, took place on August 21, 2008, and is the subject of defense counsel's motions to suppress filed at Docket Nos. 17 and 52 and Defendant's own motion at Docket No. 19.  The affidavit supporting the search warrant executed on that date was submitted by Detective Andrew Carlson of the Saginaw Township Police Department.  The property to be searched for at 1123 Brown Street included, inter alia, a 9 mm handgun, ammunition, and other firearms.  In relevant part, the affidavit provides:

> 3.      The FACTS establishing probable cause or the grounds for the search are:
>
> . . .
>
> B)      I have been assigned to investigate an assault with a gun case regarding an incident that occurred on 1123 Brown Street.  I was informed that on 8/21/08 Saginaw Police Officers received a dispatch call at 817 hours to 1123 Brown Street, City of Saginaw, County of Saginaw, to meet with complainant Tracie Lynette Alexander-Grissom outside of the residence. Ms. Grissom informed the officers that Robert Duane Noel had pointed a handgun at her while they were inside of the residence and made threats to kill her.  Robert Noel also told Ms. Grissom if police were contacted, he would kill the police.  While conducting the interview of Ms. Grissom, Robert Noel exited the resident and responding

-4-

officers took him into custody.  Robert Noel's person was searched and no gun
was located.

. . .

Mtn to Supp. Ex. A [Dkt. # 17-3].

On about July 28, 2009, Defendant filed on his own behalf a document [Dkt. # 50] entitled,
"Affidavit," and is purportedly written by Donnie L. Rowe.  Rowe states that on August 21, 2008,
Rowe arrived at Defendant's at about 3:30 a.m., and eventually went to sleep.  At 7:30 a.m.
Defendant's mother came by the house.  At about 8:00 a.m. Tracie Lynette Alexander-Grissom came
to the back door, saw that Defendant had company, and started cursing.  Rowe did not let her in the
house and Alexander-Grissom stated that she was going to call the police.  Defendant's phone rang,
he answered it, the police stated that Alexander-Grissom had said that Defendant assaulted her with
a gun.  Defendant told the police she was lying.  Defendant's neighbor called him and told him that
the police were at the corner, Defendant got his bike, came out of the house, rode it to the corner,
with Rowe looking out the window.  The police came to the house with Defendant in the car, tried
to bust the door down, then left.

The fourth search, which did not give rise to a count in the indictment, took place on
September 4, 2008, and is the subject of defense counsel's motion to suppress filed at Docket No.
51 and Defendant's own filing at Docket No. 34.  The affidavit supporting the search warrant
executed on that date was submitted by Trooper Larrison.  The portions of the affidavit relevant to
the motion to suppress are nearly identical to the portions of the affidavit described above, as to the
search warrant executed on August 3, 2007.  The exceptions are that in this affidavit, Trooper
Larrison stated that the confidential informant was "surveilled to the address by BAYANET
officers," rather than "transported to the address by an undercover officer"; the seller was an

"unknown black male," rather than a black male with the street name "Face"; and what was previously stated in paragraph C is titled paragraph E, and the new paragraphs C and D describe the circumstances surrounding the execution of the August 3, 2007, and July 24, 2008, search warrants. Mtn to Supp. Ex. 3 [Dkt. # 51-5].

II

A. *Challenges to search warrants executed on August 3, 2007, and July 24, 2008*

Prior defense counsel Russell Perry filed motions to suppress pertaining to the search warrants executed on August 3, 2007, and July 24, 2008, at Docket Nos. 16 and 18. When current standby counsel Ken Sasse was defense counsel, he withdrew those two motions and filed a new motion to suppress at Docket No. 51. Through standby counsel's motion, Defendant contends that the search warrants were not supported by probable cause because the affidavits do not show that the confidential informants are worthy of belief and because the police did not sufficiently corroborate the stories of the confidential informants. Defendant also argues that the good-faith exception to the exclusionary rule does not apply because the officers should have realized that detailed corroboration was essential to a valid warrant. Finally, Defendant contends that the inclusion of false information and the omission of material information requires suppression of the evidence.

Additionally, Defendant filed on his own behalf a motion at Docket No. 20 entitled, "motion for Franks hearing and suppression of all evidence in indictment count 1 and 2." Defendant repeats much of standby counsel's filing at Docket. No. 51. Defendant also contends that the affiants "knowingly and intentionally made up materially deliberate false statements and omissions with the

reckless regard for the truth to establish 'probable cause.' " Defendant complains that the affiants did not state that:

- the activity was ongoing
- larger amounts of controlled substances were viewed on the premises
- substantial foot traffic other than the occupants was observed
- there was audio or video recordings of the controlled drug buys

Defendant also states the following:

- Defendant never sold drugs
- there was no controlled drug buy
- there are no drugs that establish a nexus
- no drugs were sent to the Michigan State Police Laboratory for chemical analysis
- there is no report substantiating the alleged controlled buy
- there is no confidential informant.

Defendant filed an "addendum" to this motion at Docket No. 30. It appears to add the accusation that the affidavits were not made of the affiants' personal knowledge. At hearing, Defendant also emphasized that the affidavits did not identify the time of day that the alleged controlled buys took place.

In *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983), the Supreme Court recognized that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules" and adopted the "totality of the circumstances" test. *Id.* An affidavit in support of a warrant must provide the magistrate with a substantial basis for determining the existence of probable cause. *Id.* at 239. With respect to a finding of probable cause based on the statements of an informant, the Sixth Circuit provided the following framework in *United States v. Miller*:

> Rigid legal rules should not be the guiding hand of probable cause determinations. Instead, the totality of the circumstances test requires the issuing judge to make a practical, common sense decision . . . given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons

-7-

supplying hearsay information. While veracity, reliability, and basis of knowledge are highly relevant in determining the value of an informant's report, these elements are not separate and independent requirements that are to be inflexibly exacted in every case. Rather, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

314 F.3d 265, 268 (6th Cir. 2002) (internal citations and quotations omitted).

A valid search warrant must include a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (citations and internal quotations omitted). In *Laughton*, for example, police officers observed an informant make two controlled buys from the defendant at the defendant's residence. *Id.* at 746. Based on their observations and the informant's statements, an officer swore an affidavit in an application for a warrant to search the defendant's residence. *Id.* The affidavit contained information regarding a confidential informant's narcotics purchases from the defendant, but did not state any information relating to the defendant's residence, such as that the officers observed the informant enter the defendant's residence for two narcotics purchases.

The Sixth Circuit concluded that, while the affidavit referred to the defendant's involvement in drug trafficking and sales, it lacked probable cause to support a search of his residence because it did not establish "any connection between the residence to be searched and the facts of criminal activity that the officer set out in the affidavit. That affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." *Id.* The *Laughton* court noted that an affidavit that "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge'" such that it is "lacking in indicia of probable cause" to be "barebones." *Id.* at 749 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.

1998)).  The court also noted that the affidavit did not contain the location of the controlled drug purchases, did not explicitly state that the informant bought narcotics from the defendant, or provide where the residence was located or when the purchases were made.  *Id.* at 751.  Though the officers possessed evidence connecting the alleged illegal activity to the place to be searched, the court found that the affidavit itself did not contain a "modicum of evidence" that demonstrated a connection with the alleged controlled substance sales to the defendant's residence.  *Id*. at 749.  Ultimately, the court found the warrant to be barebones, inasmuch it only contained the address of the residence, a statement regarding the officer's experience, and two "contextual allegations" against the defendant.  *Id.* at 751.

At this juncture, Defendant's motions rely primarily on *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996).  In *Weaver*, a known and previously reliable informant told police that he had learned from a third party that an unknown person may be selling marijuana on or near a residential street.  *Id.* at 1375-76.  The informant stated to the investigating officer that he would attempt to purchase marijuana.  *Id.* at 1376.  The officer provided the informant with money for the transaction, but did not conduct surveillance of the transaction.  *Id.*  Soon thereafter, the informant met with the officer and told him that he purchased marijuana from the defendant at the defendant's residence.  *Id.*  The informant also stated his belief that the defendant was harvesting marijuana at the residence, though he did not observe any indications of a growing operation.  *Id.*  The officer and the informant then drove past the residence, in order for the informant to identify the residence.  *Id.*  Additionally, the officer verified that the residence's utilities were registered in the defendant's name.  The officer did not, however, take any further investigative efforts and did not have any prior knowledge connecting the defendant to drug trafficking.  *Id.*  The officer's affidavit attempted to affirm the

-9-

informant's credibility by stating that the informant had previously supplied reliable and accurate information regarding illegal activity and that the informant observed the alleged illegal activity in the past three days. *Id.* at 1375-76. The search revealed a quarter of an ounce of marijuana and firearms, but no other evidence of a distribution or grow operation. *Id.* at 1376.

The court acknowledged that when the hearsay statements of a reliable informant provide the factual basis for a showing of probable cause, the statements should meet the following requirements to : (1) provide an "explicit and detailed description of the wrongdoing . . . observed firsthand"; and (2) be corroborated "through the officer's independent investigative work . . ." *Id.* at 1377 (*quoting United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (*citing United States v. Gates*, 462 U.S. 213, 234, 244 (1983))). Viewed under that standard, the affidavit did not establish probable cause because it did not contain any "underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own 'belief ' . . . " *Id.* at 1378. Moreover, the affidavit did not establish that the informant had provided information that lead to drug-related prosecutions. These deficiencies regarding a demonstration of the informant's past performance notwithstanding, the officer's failure to corroborate the informant's statements ultimately was determinative:

> More important, however, is that [the officer] possessed only [the informant's] tip linking [the defendant] to possible drug activities, yet undertook no substantive independent investigative actions to corroborate his informant's claims, such as surveillance of the [defendant's] residence for undue traffic or a second controlled purchase made with officers viewing. The discovery of the utilities account holder, by itself, is insignificant.

*Id.* Thus, the informant's statements failed to establish probable cause absent significant officer corroboration. *Id.*

-10-

In response [Dkt. # 63, 70], the government contends that each of the affidavits adequately established the respective confidential informant's credibility because each affidavit states that the confidential informant involved had proven reliable in the past, that the information provided by the confidential informant had been verified to the extent possible, and that the confidential informant had engaged in activities that led to the recovery of controlled substances. The government argues that this information alone is sufficient to establish each confidential informant's credibility and cites *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (finding that an assertion that the confidential informant is a known person is "sufficient to establish the informant's reliability" and citing similar cases). The government emphasizes that the judge issuing the warrant also had before him the details of a controlled purchase of drugs from the residence and cites *United States v. Jackson*, 470 F.3d 299, 307-08 (6th Cir. 2006) (controlled purchase of drugs from premises to be searched is sufficient independent corroboration of informant's reliability).

Based on the above, it appears that the affidavits established probable cause to search Defendant's residence. *Weaver* does not provide strong support for Defendant's position here, because the confidential informants engaged in controlled buys at Defendant's residence. While the transaction itself was not witnessed, the affidavits describe the events witnessed by the officers just before and after the transaction. The affidavits state that the informants were searched for the presence of controlled substances; they were then either transported or surveilled to the residence; they were seen to enter the location, remain for a short period of time, and then exit; the informants then met with investigators at a pre-determined location and turned over the suspected crack cocaine to a detective; and the substance field tested positive for the presence of cocaine. The only statements of the informants that do not appear to be corroborated involve the "street name" of the

-11-

person who sold them drugs inside the residence and the fact that the person told the informants that they could come back if they sought to purchase more drugs.

Moreover, even if the affidavits were lacking in probable cause, it appears that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies.  In *Leon*, the Supreme Court modified the exclusionary rule "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900.  The Court set forth the following four situations where the good faith exception is inapplicable:

> [F]irst, if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; second, if the issuing magistrate wholly abandoned his judicial role; third, if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or in other words, where the warrant application was supported by [nothing] more than a bare bones affidavit; and, fourth, if the warrant may be so facially deficient-i.e., failing to particularize the place to be searched or the things to be seized . . . .

*Weaver*, 99 F.3d at 1380 (*citing Leon*, 468 U.S. at 914-15, 923) (citations and quotations omitted).

In the instant case, Defendant contends that a reasonable officer would know that searches based on these affidavits, which allegedly lacked sufficient corroboration, were illegal.  However, the government cites to several cases, including *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003), in which a warrant was upheld when it was based on an affidavit describing a controlled buy by the confidential informant and the affidavit stated that the confidential informant had been reliable in the past.  Furthermore, the Sixth Circuit has rejected the position that "a CI's information must always be independently corroborated by police, or that an affidavit must in every case set out and justify a CI's expertise in identifying the particularities of the criminal activity alleged." *United States v. Allen*, 211 F.3d 970, 974 (6th Cir. 2000).  *See also United States v. McCraven*, 401 F.3d

-12-

693, 697-98 (6th Cir. 2005) ("[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. . . there could be . . . a detailed description of what the informant observed first-hand . . .").

In contrast, Defendant contends that the warrants either included false information or omitted material information because Defendant has provided a sworn statement that he "never sold no drugs to nobody," and that there "was no controlled drug buy." *See* [Dkt. # 20]. This contrasts with the information provided in the search warrant affidavits which describe controlled buys from "Face" and "Booty Face," which are Defendant's admitted street names. Defendant contends that his sworn statement provides sufficient evidence for an evidentiary hearing. However, whether Defendant's statements are true is immaterial to whether the affiants made knowing or recklessly false statements in the affidavits. Even if the CI's provided false information, Defendant has not suggested that the affiant had any reason to know, or should have known, that the information was false. Defendant also contends that the affidavits failed "to inform the magistrate of facts tending to show the absence of drug dealing." However, Defendant does not identify what these facts would have been.

At hearing, however, Defendant further explained his theory that the affiants of the search warrants made deliberately false statements when they described controlled buys. Defendant contends that, despite prior counsel Russell Perry's request for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the government did not provide to Defendant certain documentation related to the alleged controlled buys, which he contends would have been created pursuant to police protocols for controlled purchases of controlled substances. At hearing, Defendant specifically requested certain documents, including surveillance notes, NARC and field test reports, and state police laboratory reports, because he believes that they will demonstrate

-13-

information known to the officers at the time they applied for the search warrants that was either omitted from the application or misrepresented in the application.  The government did not have these documents in its possession, but informed Defendant and the Court that if in existence, they could be produced within days, on or before October 26, 2009.  Defendant informed the Court that he would be able to review any documents immediately, and specifically requested only a short period of time to review the documents.  The Court agreed that four days would be sufficient for Defendant to review the documents and determine if he would like to supplement his motions before the Court addresses the motions.  Thus, Defendant will be directed to provide a supplemental response, if he elects to do so, on or before November 2, 2009.  The Court will not address the motions to suppress related to counts 1 and 2, until after review of any supplemental materials provided by Defendant.  The Court will direct a response from the government should a response be necessary.

B.  *Challenges to search warrant executed on August 21, 2008*

Prior defense counsel Russell Perry filed a motion to suppress pertaining to the search warrant executed on August 21, 2008, at Docket No. 17.  The motion is substantively similar to the motion to suppress discussed above, except that it claims that the affidavit filed in support of this warrant failed to demonstrate that the officers took steps to corroborate the information provided by the citizen complainant, Alexander-Grissom, with whom Defendant had a prior relationship.

Standby counsel incorporated prior defense counsel's arguments in a motion to suppress filed at Docket No. 52.  Through this motion, Defendant also contends that even if probable cause existed, the warrant is defective because it contains false information and omits significant information.  Defendant contends that the following information was either false or omitted.  First, Defendant

-14-

contends that if the statement of Donnie Rowe, claiming that Defendant did not have a gun, is accurate, either police officers or Alexander-Grissom made false statements. Second, Alexander-Grissom used a false name when she contacted the police via 9-1-1. The false name was not disclosed to the magistrate judge. Third, Defendant contends that he did not threaten to kill the police as alleged in the affidavit. Rather, according to Alexander-Grissom in the arrest report, Defendant stated that he was not "scared of them." Fourth, Alexander-Grissom is a convicted felon, a fact that was not reported to the magistrate judge. In conclusion, Defendant contends that, based on the above, the affiant either deliberately or recklessly misled the magistrate judge.

Additionally, the document filed by Defendant on his own behalf at Docket No. 19 is entitled, "motion for suppression of all evidence in indictment count 3." Defendant repeats much of his prior counsel's filing at Docket No. 17, which has been adopted by his current counsel at Docket No. 52. Defendant also contends that the actual person who called 9-1-1 was someone named "Shari Davis" who was "anonymous." He has attached a report from "central dispatch" provided by the Saginaw County 9-1-1 Communications Center Authority. The name Shari Davis appears on the report. At hearing, Defendant made the assertion that he furnished a letter to the government that he had received from Daniel Hess, a Saginaw employee, confirming that the 9-1-1 caller identified herself as Shari Davis. The government did not dispute receiving this document from Defendant.

Defendant filed another document entitled, "Addendum to motion for suppression of all evidence in indictment count 3," at Docket No. 31. Defendant accuses the affiant of the search warrant of using false statements with a reckless disregard for the truth because the caller was Shari Davis rather than Tracie Alexander-Grissom. Defendant filed another document entitled,

-15-

"supplemental brief on addendum for Franks hearing/motion for suppression of all evidence in indictment count 3," at Docket No. 38. This document reiterates the contention that "Shari Davis" was an anonymous caller and that the affiant made false statements.

In response, the government contends that probable cause for a search warrant may be based solely upon information drawn from a crime victim, even in the absence of independent corroboration and cites *United States v. Martinelli*, 454 F.3d 1300, 1307 (11th Cir. 2006). In *Martinelli*, the Tenth Circuit Court of Appeals stated: "The courts have traditionally viewed information drawn from an ordinary witness or crime victim with considerably less skepticism than information derived from anonymous sources." *Id.* However, *Martinelli* does not strongly support the government's position because, based on the facts before it, the Tenth Circuit found that "there was a high level of corroboration" when numerous complaints were filed against the defendant with the Better Business Bureau by multiple victims and the complaints contained substantially the same allegations. *Id.* The government further contends that the information provided by Alexander-Grissom was corroborated by the fact that Defendant came out of the house, because she had indicated that he was inside. The fact that Alexander-Grissom's statement that Defendant was present could be corroborated suggests little about Alexander-Grissom's general reliability other than her knowledge of the location of Defendant's residence.

The government also argues that even if the court were to determine that the affidavit failed to establish probable cause, the good faith exception would apply because there was some basis for the officer to believe that there was a nexus between criminal activity and the place to be searched, citing *United States v. Washington*, 380 F.3d 236 (6th Cir. 2004). The government notes that the officer had a basis for believing that Defendant had committed the crime of assault and battery

-16-

inside the residence.  The officer also had a basis for believing that the handgun was located in the residence because the gun was not on Defendant when he exited the residence.

Finally, the government contends that an evidentiary hearing is not warranted because Defendant has not made "a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the informant with reckless indifference to the truth."  *United States v. Giacalone*, 853 F.2d 470, 475-76 (6th Cir. 1988).  The government does not address the fact that the affiant did not inform the magistrate judge that Alexander-Grissom provided a false name when she called 9-1-1, or that Alexander-Grissom was a convicted felon.  Significantly, at hearing Defendant corroborated the fact that Alexander-Grissom is a convicted felon, but acknowledged that there was no reason to believe that the police knew that information.

As noted above, at this juncture neither Defendant nor the government have provided particularly relevant legal authority to support their positions, i.e., cases where an alleged victim makes statements shortly after the alleged crime occurred, and the court discusses whether any, or how much, corroboration is necessary to establish probable cause.  Thus, the Court will provide the parties with an opportunity to provide additional legal authority, on or before November 6, 2009.

*C.  Defendant's filings at Docket Nos. 21, 44*

The document filed by Defendant on his own behalf at Docket No. 21 is entitled, "motion to suppress/for lack of judicial power and jurisdiction of counts 1, 2, 3 of indictment, where there is no record of the filing, affidavit for search warrant, search warrant, and no proper return filed, to acquire proper jurisdiction."  In this motion, which relates to all three counts, Defendant contends that the Court lacks jurisdiction because the search warrant affidavits were not filed on the docket.

-17-

Defendant contends that the first step in an action is filing a complaint, and that the search warrant affidavits are the complaints in this case. Defendant's motion describes, inter alia, the creation of state courts in Michigan and the requirement of a warrant for an arrest. The motion also suggests that the court that issued the search warrants did not have jurisdiction. Defendant also filed a supplemental brief at Docket No. 44. In the brief, Defendant challenges "the authority of Saginaw County Prosecutor Office to legally transfer void information, to the United States Assistant Attorney Nancy Abraham on a void process."

In response [Dkt. # 70], the government contends that "although the procedural steps enumerated in Rule 41(d) [of the Federal Rules of Criminal Procedure] are important and should not be disregarded, they are ministerial and absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search." *Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996) (internal quotations, citations, and alterations omitted). In any event, the government contends that suppression and dismissal would not be the appropriate remedy.

Based on the above, and the fact that Defendant has not demonstrated any prejudice from the alleged mistakes regarding the procedures followed, Defendant's motion [Dkt. # 21] will be denied.

### D. Defendant's filings at Docket Nos. 22, 29

The document filed by Defendant on his own behalf at Docket No. 22 is entitled, "motion for subpoena duces tecum/best evidence or exculpatory evidence in relation with motion for suppression of all evidence in indictment count 3." In the motion, Defendant states that when he was arrested on September 4, 2008, his Boost mobile phone was seized by Trooper Tim Larrison. Defendant contends that the phone has recorded phone calls on it that are "best evidence/exculpatory

evidence" that will establish his innocence and that the Boost mobile phone is crucial to the motion for suppression. Defendant represents that before he was arrested he played the phone call to prior defense counsel and that the recording shows that "the whole incident [count 3] was a lie of this jealous female, mad that [he] had female company." Defendant complains that prior defense counsel did not request production of the phone from the government. Defendant filed an "amendment" to this motion at Docket No. 29, indicating that the phone was seized by Trooper Kenneth Campbell rather than Trooper Larrison.

In response [Dkt. # 70], the government simply asserted, "All evidence in this matter is available for inspection and review by defendant as provided in Rule 16 of the Federal Rules of Criminal Procedure." At a prior hearing on March 6, 2009, the government attorney indicated that she was not aware that the government was in possession of the cell phone, but she stated that she would investigate the matter. Defendant indicated that his cell phone provider was "Boost Mobile." He could not recall his cell phone number. His mother, who was present at the hearing, also could not verify Defendant's cell phone number. The Court ordered the government to investigate the seizure of the cell phone and to make it available to defense counsel for inspection within thirty days.

On April 29, 2009, Defendant filed an objection on his own behalf at Docket No. 37. Defendant objected to the arrangement that his prior counsel made to inspect the cell phone and its contents with the government attorney. Defendants contends that he should be present for the inspection and that the inspection should occur on the record in the Court. Defendant accuses the government attorney and his prior counsel of tampering with exculpatory evidence.

-19-

At the Court's request, the government produced the phone for inspection by Defendant, with standby counsel present, subsequent to the hearing on October 21, 2009. Thus, at this juncture, Defendant's motion will be denied as moot.

*E. Defendant's filings at Docket Nos. 24, 25*

The document filed by Defendant on his own behalf at Docket No. 24 is entitled, "motion for subpoena duces tecum." The motion relates to count 3. Defendant would like to subpoena Donnie Rowe as a witness at the motion to suppress hearing. Donnie Rowe is a woman who was in the house with Defendant when Tracie Alexander-Grissom made allegations against Defendant on August 21, 2008. Defendant complains that his counsel did not prepare an affidavit from Ms. Rowe or subpoena her to appear as a witness. Donnie Rowe testified at the suppression hearing on October 21, 2009; thus, this motion will be denied as moot.

The document filed by Defendant on his own behalf at Docket No. 25 is entitled, "motion for subpoena duces tecum." This motion relates to count 3. Defendant would like Jacinta Denise Jones, Janessa Neal, and Marcus Jones subpoenaed as res gestae witnesses. Defendant contends that prior defense counsel refused to obtain affidavits from the individuals or subpoena them, but Defendant contends that they may have been present on August 21, 2008, and can prove that the alleged incident "is a lie."

In response [Dkt. # 70], the government states that it has no objection to the Court issuing subpoena's on Defendant's behalf. Significantly, Defendant has not identified any specific testimony that would be provided by these witnesses; and, to the extent that Defendant seeks res gestae witnesses at the suppression hearing the Court finds that they are not necessary. Thus, this

motion will be denied.  To the extent that Defendant seeks to subpoena them for trial, the issue is raised prematurely.

*F.  Defendant's filing at Docket No. 27*

The document filed by Defendant on his own behalf at Docket No. 27 is entitled, "motion to dismiss indictment counts 1, 2, and 3."  In the motion, Defendant states that on August 22, 2008, and September 4-5, 2008, he was charged with myriad crimes in state court.  On September 17, the charges were dropped, but the same day he was charged with the federal complaint in this case. Defendant contends that the U.S. Department of Justice has a firmly established policy, known as the Petite policy, under which U.S. Attorneys are forbidden from prosecuting any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person.  Defendant complains he has not been provided with papers from the U.S. Department of Justice authorizing the U.S. Attorney to prosecute him in federal court.

In response [Dkt. # 70], the government contends that the Petite policy gives no rights to a criminal defendant and is only applicable when a state prosecution is for identical charges and is resolved on the merits.  *See United States v. Renfro*, 620 F.2d 569, 574 (6th Cir. 1980).  The government further contends that the government is the only party with standing to assert the applicability of the policy.  *See id.*  Finally, the government contends that even if Defendant had the right to enforce the policy, it would not be applicable here because the state charges were dismissed by the prosecutor's office prior to an adjudication of the case on the merits.

Based on the legal authority advanced by the government, Defendant's motion will be denied.

*G.  Defendant's filings at Docket Nos. 33, 34, 46*

The document filed by Defendant on his own behalf at Docket No. 33 is entitled, "motion for return of property." In this motion, Defendants contends that the following was taken from him when he was arrested on September 4, 2008: a cell phone, $538.00 in cash, and $53.00 in cash. Defendant complains that he was never served a notice of forfeiture and that forfeiture is not appropriate in this case because he has not been charged with any crimes regarding controlled substances. Defendant attaches a BAYANET form indicating that the property was seized on the date of his arrest. In his "supplemental brief" filed at Docket No. 46, Defendant reiterates that the notice of forfeiture was allegedly defective because he was not served with it.

In response [Dkt. # 70], the government contends that Defendant is not entitled to return of the property because he has not shown that he has been "aggrieved by an unlawful search and seizure of property," pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. Not insignificantly, however, Defendant filed on his own behalf, at Docket No. 34, a document entitled, "motion for Franks hearing . . . suppression hearing." This document challenges the search warrant executed on September 4, 2008, as does defense counsel's motion filed at Docket No. 51. While Defendant is not charged with any activities arising out of that search warrant, as the indictment only refers to August 3, 2007, and July 24 and August 21, 2008, the merits of his motion may determine whether he is entitled to the return of the property seized. Additionally, the government has not indicated that it intends to use the seized property as evidence or to seek forfeiture, and Defendant may simply be entitled to return of the property.

In his motion to suppress [Dkt. # 34], Defendant contends that the affiant, Trooper Larrison, "knowingly and intentionally made up materially deliberate false statements and omissions with the

-22-

reckless regard for the truth to establish 'probable cause.' " Defendant complains that the affiant did

not state that:

- the activity was ongoing
- larger amounts of controlled substances were viewed on the premises
- substantial foot traffic other than the occupants was observed
- there was audio or video recordings of the controlled drug buys

Defendant also states the following:

- Defendant never sold drugs
- there was no controlled drug buy
- there are no drugs that establish a nexus
- no drugs were sent to the Michigan State Police Laboratory for chemical analysis
- there is no report substantiating the alleged controlled buy
- there is no confidential informant.

Defendant also contends that the affidavit was not made of the affiant's personal knowledge.

The government did file a response to Defendant's motion [Dkt. # 34], but the Court finds

that a response from the government is necessary to address Defendant's contentions.  Thus, the

Court will direct the government to provide a response and to further address the return of

Defendant's property, on or before November 6, 2009.

*H.  Defendant's filing at Docket No. 67*

The document filed by Defendant on his own behalf at Docket No. 67 is entitled, "motion

to disqualify judge and change of venue."   Defendant contends, "The Judge has/is showing

favoritism toward the prosecution in this matter, circumventing the proceeding through clever and

crafty methods with his Judicial authority."  Defendant objects to the manner in which the Court has

dealt with the motions he has filed on his own behalf and the appointment of counsel.  Defendant

emphasizes his ability to adequately represent himself.

-23-

In response, the government contends that adverse rulings against a party do not demonstrate judicial bias. The government emphasizes that a judge is only required to disqualify himself where his impartiality might reasonably be questioned or where he has a personal bias or prejudice against one of the parties pursuant to 28 U.S.C. § 455. Finally, the government contends that Defendant has not shown prejudice such that he would not be able to receive a fair trial to justify transfer pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure.

Disqualification is not appropriate in this case as there is no judicial bias. While Defendant appears to assert that the Court should have ruled on the motions he filed on his own behalf without delay, the Court had a duty to resolve the potential conflict of interest when he was simultaneously represented by defense counsel. While Defendant has recently become emphatic about representing himself, he has not always been so. At the hearing on March 11, 2009, Defendant wavered on the issue and indicated on the record that he wanted to argue his motions, but that he also preferred that defense counsel argue the motions filed by defense counsel. At this juncture, the Court is satisfied that the motions filed by Defendant on his own behalf do not present a conflict with the motions filed by current defense counsel. As previously indicated, Defendant is now proceeding pro se, and the Court will address his motions forthwith. Additionally, the Court will address the motions filed by defense counsel. Based on the above, Defendant's motion to disqualify judge and for change of venue will be denied.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's "motion to suppress/for lack of judicial power and jurisdiction of counts 1, 2, and 3 of indictment" [Dkt. # 21], Defendant's motion for subpoena duces tecum [Dkt. # 25], Defendant's "motion to dismiss indictment counts 1, 2, and 3"

-24-

[Dkt. # 27], and Defendant's "motion to change venue, motion to disqualify judge" [Dkt. # 67], are **DENIED**.

It is further **ORDERED** that Defendant's "motion for subpoena duces tecum/best evidence or exculpatory evidence" [Dkt. # 22] and Defendant's motion for subpoena duces tecum [Dkt. # 24] are **DENIED AS MOOT**.

It is further **ORDERED** that the government is **DIRECTED** to furnish to Defendant, on or before **October 26, 2009**, the documents requested by Defendant, as identified at the hearing and by this order, which relate to Docket Nos. 17, 20, and 51.

It is further **ORDERED** that Defendant is **DIRECTED** to file a supplemental response to his motions to suppress [Dkt. # 17, 20, 51], should he elect to do so, based on the documents newly obtained from the government on or before **November 2, 2009**.

It is further **ORDERED** that both the government and Defendant are **DIRECTED** to file any additional legal authority regarding the motions to suppress evidence related to count 3, as discussed above, including Docket Nos. 19 and 52 on or before **November 6, 2009**.

It is further **ORDERED** that the government is **DIRECTED** to file responses to Defendant's motion for return of property [Dkt. # 33] and "motion for Franks Hearing and Motion to Suppression Hearing" [Dkt. # 34] on or before **November 6, 2009**.

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

Dated: October 26, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 26, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS